IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**LINDY COCHRAN**                                                                                    **PLAINTIFF**

**v.**                                                              **Civil No. 2:24-cv-109-HSO-BWR**

**DARIUS R. MCGEE, et al.**                                                      **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS [19], [20], [21] TO DISMISS

Defendants Darius R. McGee, Amy Keene, and Priority Medical Clinic, LLC's Motions [19], [20], [21] to Dismiss ask the Court to abstain from exercising jurisdiction over this case, or, in the alternative, to dismiss Plaintiff Lindy Cochran's claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq., for a lack of continuity. The Court finds that the Motions [19], [20], [21] should be denied in part, to the extent they seek abstention, and granted in part, to the extent they seek dismissal of Plaintiff's Racketeer Influenced and Corrupt Organizations Act claim. Plaintiff's claims arising under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and under state law will proceed.

I. BACKGROUND

Plaintiff Lindy Cochran ("Plaintiff") founded Defendant Priority Medical Clinic, LLC ("the Clinic") in Laurel, Mississippi, and from its inception on August 15, 2013, until August 2023, she "managed the day-to-day operations of the Clinic, serving as a nurse practitioner, handling billing, payroll, and other necessary management tasks." Am. Compl. [7] at 3. On August 28, 2021, Defendant Darius

R. McGee ("McGee") acquired a one-half interest in the building that housed the Clinic, but not in the Clinic itself. *Id.*

The operative Amended Complaint [7] asserts that on or about August 1, 2023, Defendants McGee and Amy Keene ("Keene"), an employee of the Clinic, "conspired to unlawfully remove Plaintiff from her position and seize control of the Clinic." *Id.* at 4. Plaintiff claims that Defendants McGee and Keene began "secretly changing account passwords for essential business data, including payment systems for federal tax payments, 941 payments, and bank accounts, without Plaintiff's knowledge or consent." *Id.* They then allegedly "barred [Plaintiff] from patient files and unlawfully terminated the collaborative agreement," which prevented her from continuing her work as a nurse practitioner. *Id.* The Amended Complaint [7] describes these actions as a "hostile takeover of the business." *Id.*

According to Plaintiff, Defendants McGee, Keene, and the Clinic (collectively "Defendants") forged an LLC agreement, using Plaintiff's digital signature without her permission, and presented the forgery to "Trustmark Bank and other institutions to perpetuate their fraud and freeze Plaintiff out of her accounts." *Id.* at 5. The Amended Complaint [7] contends that Defendants falsely represented that Plaintiff was not associated with the Clinic, and that Trustmark Bank, relying on these false representations, froze the Clinic's bank account on August 15, 2023. *Id.*; *see also* RICO Statement [6] at 4. Defendants then "unlawfully accessed and controlled the Clinic's bank accounts, funneling corporate monies into a separate

2

account for their personal benefit, thereby embezzling funds from the Clinic." Am. Compl. [7] at 5.

Plaintiff brought suit in the Circuit Court of Jones County, Mississippi, Second Judicial District, on September 21, 2023, naming McGee, "Amy Keen," the Clinic, and "Trustmark Corporation"[1] as defendants. *See* State Court Compl. [19-1]; *see also Cochran v. McGee*, 34CI2:23-cv-50 (Jones Circuit Court – Laurel filed Sept. 21, 2023). Plaintiff raised state-law claims for accounting, breach of fiduciary duties, breach of duties of loyalty, breach of the covenant of good faith and fair dealing, conversion, punitive damages, infliction of financial and emotional distress, and slander and defamation. *Id.* at 4-9. Plaintiff later stipulated to the dismissal of "Trustmark Corporation" from the state-court proceedings. *See* Stipulation of Dismissal, *Cochran v. McGee*, 34CI2:23-cv-50 (Jones Circuit Court – Laurel May 17, 2024), ECF. No. 25.

On July 23, 2024, Plaintiff brought a parallel suit in this Court, *see* Compl. [1] at 27, then filed the operative eighteen-count Amended Complaint [7] on October 14, 2024, naming McGee, Keene, and the Clinic as Defendants, *see* Am. Compl. [7] at 27. The Amended Complaint [7] brings two federal claims. *See id.* at 14-17, 20-23. Specifically, Plaintiff asserts violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. (Count Nine), and of 18 U.S.C. § 1030(a)(4) of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030

---

[1] Plaintiff improperly named Trustmark National Bank as "Trustmark Corporation." *See* Stipulation of Dismissal, *Cochran v. McGeel*, 34CI2:23-cv-50 (Jones Circuit Court – Laurel May 17, 2024), ECF No. 25.

3

(Count Sixteen). *Id.* She bases her RICO claim on allegations that Defendants committed wire fraud under 18 U.S.C. § 1343, mail fraud under 18 U.S.C. § 1341, bank fraud under 18 U.S.C. § 1344, embezzlement and theft, and a violation of the CFAA under 18 U.S.C. § 1030(a)(4). *Id.* at 15-16.

The Amended Complaint [7] also advances state-law claims for accounting (Count One), breach of fiduciary duties and breach of duties of loyalty (Count Two), breach of the covenant of good faith and fair dealing (Count Three), conversion (Count Four), intentional infliction of emotional distress (Count Five), slander and defamation (Count Six), tortious interference with business relations (Count Seven), civil conspiracy (Count Eight), unjust enrichment (Count Ten), constructive trust (Count Eleven), gross negligence (Count Twelve), bad faith breach of contract (Count Thirteen), fraud and misrepresentation (Count Fourteen), civil theft (Count Fifteen), judicial dissolution (Count Seventeen), and punitive damages (Count Eighteen). *Id.* at 6-25. Each Defendant has brought near-identical Motions [19], [20], [21] to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), *see* Mots. [19], [20], [21], to which Plaintiff has responded, *see* Resp. [25].

Defendants argue that the Court should dismiss this case because it is duplicative of the parallel state-court litigation, which was filed first, Mems. [22], [23], [24] at 1-2, and they contend that Plaintiff has not adequately stated a RICO claim because she has not pled facts sufficient to show continuity, *id.* at 2.

Plaintiff responds that she is seeking a stay of the state-court action, and that this could remove any concerns about duplicative litigation. Mem. [26] at 4-5.

4

But even if a stay were not granted, the United States Supreme Court has held that the general rule is only to avoid duplicative litigation between federal district courts, and that "the general rule as between state and federal courts is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction.'" *Id.* at 5 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Plaintiff highlights that *Colorado River* abstention is a narrow exception to this general rule and is not warranted on the facts here. *Id.* at 5-6 (citing *Saucier v. Aviva Life & Annuity Co.*, 701 F.3d 458, 464 (5th Cir. 2012)). As to her RICO claim, Plaintiff claims that continuity is measured by the "repetitive nature of defendants' misconduct, the threat of ongoing harm, and the broader impact of their actions," all of which the Amended Complaint [7] has adequately pled.[2] *Id.* at 9-12.

Defendants did not file any replies in support of their Motions [19], [20], [21] to dismiss.

---

[2] Plaintiff appears to construe Defendants' argument that she has improperly pled her RICO claim as one that this Court lacks subject-matter jurisdiction for that reason. *See* Mem. [26] at 7-14. After a review of Defendants' Motions [19], [20], [21], it does not appear that Defendants are making any argument as to subject-matter jurisdiction. *See generally* Mots. [19], [20], [21]; Mems. [22], [23], [24]. But even if they were, this Court retains federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff properly asserts a claim arising under the CFAA. *See* Am. Compl. [7] at 20-23 (alleging facts to support that Defendants accessed a protected computer with intent to defraud and that this action resulted in more than $5,000.00 in damages to Plaintiff); *see also* 18 U.S.C. § 1030(a)(4) (stating the requirements to bring a claim under this provision of the CFAA). And Defendants have not argued otherwise. *See* generally Mots. [19], [20], [21]; Mems. [22], [23], [24].

5

II. DISCUSSION

A. Relevant Law

1. Motion to Dismiss Standard

Defendants seek dismissal of the Amended Complaint [7] for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). When presented with a motion to dismiss under Rule 12(b)(6), a court "must assess whether the complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. . . ." *Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 683 (5th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he court may not look beyond the pleadings in ruling on the motion," *Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996), and must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff, *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (citation omitted). A complaint does not need detailed factual allegations, but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations must raise a right to relief above the speculative level. *See id.*

2. Parallel Litigation

Defendants invoke the first-to-file rule, arguing that because the state-court proceedings were filed first, the Court should dismiss this parallel case. *See* Mem. [22], [23], [24] at 1-2. But the first-to-file rule is a discretionary doctrine that only applies when two related cases are brought before two federal courts. *See Def.*

6

*Distributed v. Platkin*, 55 F.4th 486, 495 (5th Cir. 2022) ("Under the first-to-file rule, when related cases are pending before two *federal* courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." (emphasis added)); *Am. Bankers Life Assurance Co. of Fl. v. Overton*, 128 F. App'x 399, 403 (5th Cir. 2005) ("We find no indication from case law that the 'first-to-file' rule plays a part in the circumstance that we face today—two actions pending, but one is in *state* court and the other in *federal* court." (emphasis in original)). So, the first-to-file rule has no application here. *See Overton*, 128 F. App'x at 403 ("As [the plaintiff] correctly points out in its reply brief, the 'first-to-file' rule applies only when two similar actions are pending in two federal courts, which is not the case have [sic] here . . . .").

Instead, in cases where a federal lawsuit is brought alongside state-court proceedings, the Supreme Court has recognized several abstention doctrines based on considerations of comity and efficiency. In suits involving requests for coercive relief, courts apply the *Colorado River* abstention standard. *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 797 n.29 (5th Cir. 2014) ("A purely declaratory action affords a court broad discretion to defer to a parallel state proceeding. However, when an action involves coercive relief, the court must apply the abstention standard set forth in [*Colorado River*], under which the court's discretion to dismiss is narrowly circumscribed and is governed by a broader exceptional circumstances standard.") (citations and quotations omitted). *Colorado River* abstention may only be exercised under "exceptional circumstances." *St. Paul*

7

*Ins. Co. v. Trejo*, 39 F.3d 585, 589 (5th Cir. 1994). Courts consider six relevant factors in determining whether such "exceptional circumstances" are present:

> 1) assumption by either court of jurisdiction over a *res*, 2) relative inconvenience of the forums, 3) avoidance of piecemeal litigation, 4) the order in which jurisdiction was obtained by the concurrent forums, 5) to what extent federal law provides the rules of decision on the merits, and 6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006) (quotations omitted). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15-16 (1983). *"Only the clearest of justifications will warrant dismissal." Id.* at 16 (emphasis in original).

3. The Racketeer Influenced and Corrupt Organizations Act

"To state a RICO claim under [18 U.S.C.] § 1962, there must be: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003) (quotations omitted). 18 U.S.C. § 1961(1) defines "racketeering activity," listing what predicate violations of state and federal law qualify under the statute. *See* 18 U.S.C. § 1961(1). To satisfy this element, there must be two or more predicate offenses and "a plaintiff must show both a relationship between the predicate offenses . . . and the threat of continuing activity." *D&T Partners, L.L.C. v. Baymark Partners Mgmt., L.L.C.*, 98 F.4th 198, 205 (5th Cir. 2024) (quotations omitted). "Predicate acts are related if

8

they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* (quotations omitted).  And while "[t]he concept of continuity has been difficult to define[,]" *Butler v. Bancorpsouth Bank*, No. 3:05-cv-262-DPJ-JCS, 2007 WL 3237927, at *2 (S.D. Miss. Oct. 31, 2007), the Supreme Court has provided substantial guidance:

> "[c]ontinuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.  It is, in either case, centrally a temporal concept—and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear one to another, are distinct requirements.  A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time.  Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.  Often a RICO action will be brought before continuity can be established in this way.  In such cases, liability depends on whether the threat of continuity is demonstrated.

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989).

B.   Analysis

1.   Whether the *Colorado River* Factors Favor Abstention

Because whether the Court should abstain from exercising jurisdiction is a threshold question, it will first address that issue before reaching the merits of Defendants' arguments.  Applying the factors, abstention is not warranted.

9

a.   Assumption of Jurisdiction Over a *Res*

Neither this Court nor the state court has assumed jurisdiction over any *res* related to this dispute, but the Fifth Circuit has "rejected the contention that the absence of this factor is a neutral item, of no weight in the scales." *Stewart*, 438 F.3d at 492.  Instead, where no jurisdiction over a *res* has been established, "[t]his factor supports exercising federal jurisdiction." *Id.*

b.   Inconvenience of the *Fora*

"[T]his factor primarily involves the physical proximity of [each] forum to the evidence and witnesses." *Lucien*, 756 F.3d at 800 (alteration in original) (quotations omitted).  The parties, most notably the Clinic, and evidence are all based in Laurel, Mississippi, where the state court is located. *See* Am. Compl. [7] at 1-2.  By car, Laurel is roughly thirty-five minutes from Hattiesburg, Mississippi, where the federal courthouse is located.  So, the second factor weighs in favor of abstention, but does so only slightly. *See Lucien*, 756 F.3d at 800 ("The additional half-hour's drive makes the federal forum only slightly less convenient, and this inconvenience is minor compared to the 300–mile distance found 'significant' in *Colorado River*, a case involving over one thousand defendants.").

c.   Avoidance of Piecemeal Litigation

"The concern with piecemeal litigation arises primarily where parallel lawsuits pose a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." *Saucier*, 701 F.3d at 464 (alterations in original and quotations omitted).  "The classic example arises where all of the potentially

10

liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties." *Id.* (quotations omitted). "If the state court action is able to resolve all of the claims involved in a dispute with respect to all of the parties involved while the federal court action is able to resolve the dispute only partially, this would weigh in favor of abstention." *Id.*

The concern with piecemeal litigation can be confused with the concern of duplicative litigation, *see id.*, which is what Defendants' arguments appear to do here, *see* Mems. [22], [23], [24] at 1-3. Because Plaintiff has stipulated to the dismissal of "Trustmark Corporation" in the parallel state-court proceeding, *see* Stipulation of Dismissal, *Cochran v. McGee et al*, 34CI2:23-cv-50 (Jones Circuit Court – Laurel May 17, 2024), ECF. No. 25, "[t]his case involves the same essential dispute between the same . . . parties that [are] present in the state court action[,]" *Saucier*, 701 F.3d at 464. Although Plaintiff's Amended Complaint [7] here lists more claims than the State-Court Complaint [19-1], the nature of the claims in both proceedings is the same. *See generally* Am. Compl. [7]; State Court Compl. [19-1]. And both cases turn on the same facts regarding whether Defendants wrongfully deprived Plaintiff of control of the Clinic. *See generally* Am. Compl. [7]; State Court Compl. [19-1]; *see also* Mems. [22], [23], [24] at 3 (acknowledging that this case involves the same facts and the same parties). Thus, any risk of inconsistent judgments can likely be cured "through a plea of *res judicata* should one court render judgment before the other," *Kelly Inv., Inc. v. Cont.l Common Corp.*, 315 F.3d

11

494, 498 (5th Cir. 2002), and "[a]lthough proceeding in this action certainly makes duplicative litigation likely, '[t]he prevention of duplicative litigation is not a factor to be considered in an abstention determination[,]'" *Saucier*, 701 F.3d at 464 (alteration in original) (quoting *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir. 1988)). So, this factor favors the exercise of federal jurisdiction. *See id.*; *Kelly Inv.*, 315 F.3d at 498.

d.   Order in Which Jurisdiction was Obtained

"Priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Saucier*, 701 F.3d at 464 (alteration in original omitted) (quoting *Moses H. Cone*, 460 U.S. at 21). The pleadings have closed in the state-court proceedings and the parties are currently conducting discovery, whereas the pleadings remain open in this case as Defendants have not answered the Amended Complaint [7]. *See* Answer, *Cochran v. McGee et al*, 34CI2:23-cv-50 (Jones Circuit Court – Laurel filed Sept. 21, 2023), ECF No. 11. This factor weighs in favor of abstention. *See Saucier*, 701 F.3d at 464.

e.   Whether State or Federal Law Will be Applied

Plaintiff raises claims under both RICO and the CFAA, which are federal statutes. Am. Compl. [7] at 14-17, 20-23. "Although in some rare circumstances the presence of state-law issues may weigh in favor of abstention, the presence of federal-law issues must always be a major consideration weighing against surrender." *Saucier*, 701 F.3d at 465 (alterations in original omitted) (quoting

12

*Moses H. Cone*, 460 U.S. at 24). Regardless of whether Plaintiff's RICO claim survives Defendants' Motions [19], [20], [21] to Dismiss, her CFAA claim will remain, such that this factor weighs in favor of exercising federal jurisdiction. *See Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 739 (5th Cir. 1999) ("Because these cases involve both federal and state rules of decision, this factor weighs against abstention.").

f.  <u>Adequacy of the State Proceedings</u>

"[T]he adequacy of state proceedings never weighs in favor of abstention—it is 'either a neutral factor or one that weighs against abstention.'" *Saucier*, 701 F.3d at 465 (quoting *Stewart*, 438 F.3d at 493). Plaintiff does not argue that the state court cannot adequately adjudicate this case, *see generally* Resp. [25]; Mem. [26], so this factor is neutral, *see Stewart*, 438 F.3d at 493.

g.  <u>Summation of the *Colorado River* Factors</u>

An analysis of the *Colorado River* factors counsel against abstention, and the Court "must balance these in favor of the exercise of jurisdiction." *Id.*; *see also Murphy*, 168 F.3d at 739 ("[T]he balancing of these factors is heavily weighted in favor of the exercise of jurisdiction[.]" (quotations omitted)). In light of this consideration, and "in the absence of only the clearest justification," *Murphy*, 168 F.3d at 739 (quotations omitted), the Court finds that this case does "not overcome the 'extraordinary and narrow exception' to the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them[,]'" *Stewart*, 438 F.3d at 493 (quoting *Colorado River*, 424 U.S. at 814, 817). To the extent Defendants'

Motions [19], [20], [21] seek the Court's abstention from exercising jurisdiction over this matter, such request should be denied.

2.   Plaintiff's RICO Claim

Turning to the merits, Plaintiff maintains in her Response [25] that she has pled a pattern of racketeering activity that spans "a period of more than three years," Mem. [26] at 9, but the Amended Complaint [7] and RICO Statement [6] contradict this assertion, *see generally* Am. Compl. [7]; RICO Statement [6]. The only date mentioned in the Amended Complaint [7] is August 1, 2023, which is when Plaintiff states she went on maternity leave and the alleged misconduct began. *See* Am. Compl. [7] at 4. The RICO Statement [6] claims that "the fraudulent actions occurred primarily between August and September 2023" and proffers dates for each of the alleged predicate acts. RICO Statement [6] at 4-5. Specifically, it alleges that: (1) on August 1, 2023, "McGee and Keene changed account passwords and gained unauthorized access to Priority Medical Clinic's bank accounts[;]" (2) on August 15, 2023, "Defendants transmitted falsified documents to Trustmark Bank, leading to the wrongful freeze of Plaintiff's bank accounts[;]" and (3) from August 2023 until September 2023, "Defendants embezzled funds from clinic accounts, rerouting them into personal accounts." *Id.*

Such a short period of conduct is insufficient to establish closed-ended continuity. *See Malvino v. Delluniversita*, 840 F.3d 223, 232 (5th Cir. 2016) ("A closed period of repeated conduct requires predicate acts that extend over a 'substantial period of time.'" (quoting *H.J. Inc.*, 492 U.S. at 242)). The Fifth Circuit

has held that "[p]redicate acts extending over a few weeks or months . . . do not satisfy this requirement." *Id.* (quotations omitted) (holding that "[d]espite the numerous acts of mail and wire fraud that occurred . . . [a] five month period was too short a period to establish closed-ended continuity."); *see also Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992) (finding seven months insufficient to support continuity).

As for open-ended continuity, based upon the allegations in the Amended Complaint [7] there is no threat of continued conduct because "Defendants' scheme was finite and reached its 'natural conclusion'" once they gained control of the Clinic. *D&T Partners*, 98 F.4th at 210.  The Fifth Circuit has examined a similar case, where a plaintiff alleged that her former husband engaged in racketeering activity as part of a scheme to deprive her of her community property interest in a business. *See Calcasieu Marine Nat. Bank v. Grant*, 943 F.2d 1453, 1456, 1464 (5th Cir. 1991).  It found there was no threat of "continued criminal acts" because "[defendant's] acts which were alleged to have deprived [plaintiff] of a property interest were, when completed, without threat of repetition." *Id.* at 1464 (highlighting that "[e]ven where acts may support indictment for mail or wire fraud, they may be insufficient for RICO liability").  The same reasoning applies here; once Defendants accomplished their alleged objective of depriving Plaintiff of control of the Clinic, there was no longer any threat of continued criminal acts.  *See id.*; *see also Butler*, 2007 WL 3237927, at *4 ("In cases in which claimants allege a scheme with a single objective, courts have concluded that continuity does not exist because

once the objective is accomplished, there is no threat of continued criminal activity.").

Moreover, the Fifth Circuit has expressed skepticism "of RICO allegations when the victims of the alleged racketeering conduct are limited." *D&T Partners*, 98 F.4th at 207. "This is because the idea of continuity embraces predicate acts occurring at different points in time or involving different victims." *Id.* (quotations omitted). Plaintiff argues in her brief that she, the Clinic, its patients, third-party business associates, and Trustmark Bank are all victims of Defendants' alleged scheme. Mem. [26] at 11-12. But the Amended Complaint [7] and the RICO Statement [6] state differently. *See generally* Am. Compl. [7]; RICO Statement [6]. Although the Amended Complaint [7] alleges that false statements were made to other parties, it asserts that only Plaintiff suffered damage as a result of the alleged racketeering activity. *See* Am. Compl. [7] at 3-5, 14-17. And in the victims and injuries section of the RICO Statement [6], Plaintiff identifies herself as the only victim. *See* RICO Statement [6] at 3-4. Thus, to the extent Plaintiff may now argue there were other victims, "they were injured indirectly, which does not make them individual victims under RICO." *D&T Partners*, 98 F.4th at 207 (quoting *W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 635 (D.C. Cir. 2001)). And Plaintiff cannot vary the allegations in her pleadings by including new facts or claims in her Response [25]. *See Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013) ("[I]t is axiomatic that the complaint may

16

not be amended by the briefs in opposition to a motion to dismiss[.]" (quotations omitted)).

In sum, "a single scheme to accomplish one discrete goal, directed at one individual with no potential to extend to other persons or entities is not the type of racketeering pattern RICO seeks to prohibit," *id.*, and that is all that the Amended Complaint [7] alleges here, *see* Am. Compl. [7] at 14-17. While, if proven true, Defendants' alleged misconduct could be illegal, it is not the type of action Congress sought to address when it enacted RICO. Plaintiff's RICO claim should be dismissed.

### III. CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants Darius R. McGee, Amy Keene, and Priority Medical Clinic, LLC's Motions [19], [20], [21] to Dismiss are **GRANTED IN PART**, to the extent they seek dismissal of Plaintiff Lindy Cochran's claim arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq., and **DENIED IN PART**, to the extent they ask the Court to abstain from exercising jurisdiction over this case.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff's claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq., is **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 30th day of June, 2025.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE